Hillsborough, } No. 4109.
Apr. 26, 1952. }

LEE SING FOO & a. v. MANCHESTER.

*John J. Broderick, McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the petitioners.

*J. Francis Roche,* city solicitor (by brief and orally), for the city of Manchester.

*William H. Craig* (by brief and orally), for the intervenor.

DUNCAN, J. This is a zoning appeal taken pursuant to R. L., c. 51, as amended by Laws 1949, c. 278. See *Gelinas* v. *Portsmouth,* 97 N. H. 248. The decision of the board of adjustment may be set aside upon appeal "for errors of law." Laws 1949, c. 278, s. 2. The issue transferred turns upon interpretation of the Manchester ordinance. The ordinance, first adopted in 1927, like many ordinances of the period, is essentially prohibitive in form. It establishes eight major types of districts, proceeding from the most restricted to the least. More restricted than apartment house districts are "single residence A," "single residence," and "general residence" districts. Only "single-family detached dwellings" are permitted in the first. In the second, detached dwellings "for not more than two families" are also permitted under specified conditions. Among other uses permitted in these districts is a "Club, except clubs the chief activity of which is a service customarily carried on as a business and Clubs with more than five sleeping rooms." Section 2 (a) (2). In a "general residence" district, in addition to uses permitted in single residence districts, two family dwellings, detached or semi-detached, are permitted, as well as use of a detached dwelling for "not more than three families" under specified conditions. Section 3 (a) (2). In each of the foregoing districts "accessory use customarily incident to any of the [enumerated] uses" is allowed.

Section 4 of the ordinance contains the restrictions relating to "apartment house districts," although apartment house use is not therein mentioned by name. The first part of the section is as follows: "Section 4. In an apartment house district—(a) *Use:* No building or premises shall be erected, altered or used except for one

or more of the following uses: (1) Any use permitted in a general residence district; (2) Dwelling; (3) Club, except clubs the chief activity of which is a service customarily carried on as a business; (4) Hotel, provided it conforms to all the requirements of this ordinance for a dwelling; (5) Telephone exchange office; (6) Accessory use customarily incident to any of the above uses."

The provisions of this section contrast with a provision of section 5, relating to "local business districts," where permitted uses include "(1) Any use permitted in an apartment house district; (2) Hotel; . . . "

The word "hotel" is nowhere defined in the ordinance, but by section 11 words not defined are to be construed "as defined or used in the Building Code." This code defines "hotel" as follows: "Any building or part thereof designed to be used for supplying shelter and food or shelter to residents or guests and having a public dining room, cafe, or office, or either." (S. 54).

If this definition is applied to section 5 of the zoning ordinance, it is plain that the use proposed by the petitioners would be permitted in a local business district. However the provisions of section 4 with respect to hotel use in apartment house districts, limit the definition by the words "provided it conforms to all the requirements of this ordinance for a dwelling." It is the effect of this proviso which determines the petitioners' rights. The word "dwelling" is defined by the ordinance: "Any house or building, or portion thereof, which is occupied in whole or in part as the home or residence of one or more persons, either permanently or transiently, excluding hotels." (S. 11). Thus the use permitted by clause (2) of section 4 (a): "Dwelling," was not intended to include hotel use, and the uses are in general distinct.

It is reasonably plain that the numbered clauses of section 4 are descriptive of permitted uses. Subsection (a) deals with restrictions relating to "*Use*," and permitted uses are expressly enumerated after the words "the following uses." Clause (4) is therefore to be interpreted as if it read: "(4) Hotel use, provided it (the use) conforms to all the requirements of the ordinance for a dwelling."

The finding of the Trial Court establishes that the "building" meets all the restrictive requirements of the ordinance relating to dwellings. Since those requirements, particularly with respect to height, building area, and area per family vary according to the district, the finding like the proviso of *s*. 4 (a) (4) is not to be taken literally, but is interpreted to pertain to the requirements

established for an apartment house district. The finding does not control decision of the issue before us since it pertains to requirements relating to the building rather than the use. Section 4 (a) (4) requires that the use as well as the building shall conform to the requirements for a dwelling.

It seems clear that operation of a public dining room or restaurant is not permitted by the ordinance either as a "dwelling" use, which is a "home or residence" use (s. 11), or as an "accessory use customarily incident" to such a use. *Cf. Sullivan* v. *Investment Trust Co.*, 89 N. H. 112, 116. The serving of meals to persons resident in a hotel whether "permanently or transiently" (s. 11) like the serving of meals to residents of a dwelling is permitted. But the restriction placed upon hotel use in an apartment house district indicates a purpose to exclude the conduct of a public restaurant business, just as such a use is prohibited in a "club." Such a use would in our opinion violate the express restriction of section 4 (a) (4), and depart from the general scheme of the ordinance by which income producing activities are closely limited in zones primarily residential in character.

We conclude that upon appropriate amendment of their application the petitioners would be entitled to permission to use their building as a "family hotel" (see Bassett, Zoning, 196; *Simmons* v. *Pinsky*, 58 N. Y. Supp. (2d) 573) or a hotel for transients, and to furnish meals to persons residing therein permanently or temporarily, and to their guests, but not to members of the general public. To the extent that the right to conduct a public restaurant or cafe business and to alter the building for such a use, was denied as forbidden by the ordinance, there was no error. Bassett, Zoning, 211; Yokley, Zoning Law & Practice, s. 181. Since the issue is not transferred, we express no opinion as to whether a variance from the terms of the ordinance was erroneously denied by the board.

A sign "pertaining to the use" permitted, is a permissible accessory use on a lot occupied by a dwelling, provided it does not exceed "one square foot in area." S. 11 (d). This is a "requirement of [the] ordinance for a dwelling" to which the petitioners' proposed use must conform. S. 4 (a) (4). Permission to erect a sign eight square feet in area was therefore properly denied, unless the petitioners are entitled to a variance in this respect, a question which is not before us.

*Case discharged.*

All concurred.